ORMAN ET AL. V. CITY OF PUEBLO.

1. Sureties on official bonds enter into the contract with reference to existing statutes on the subject, and the law becomes a part of their obligation. Their obligation cannot be extended beyond the strict terms of the bond.

2. When a breach is assigned and an attempt is made to hold the surety, such breach must be predicated upon some official misconduct of the principal.

3. Evidential facts should not be pleaded, but only the ultimate facts showing the liability.

4. The statutes authorize the city councils to impose upon the city clerk the duty of receiving moneys paid for licenses issued by him. In such case, if his official bond be properly conditioned, his sureties will be liable for a misappropriation of such moneys.

5. Under the facts of this case, *held,* that the city council exercised the foregoing power, and that the sureties upon the clerk's official bond were liable for his misappropiation of moneys so received.

*Appeal from District Court of Pueblo County.*

THE facts are stated in the opinion.

Messrs. G. Q. RICHMOND and JOHN M. WALDRON, for appellants.

Messrs. CHAS. E. GAST and CHAS. E. STEIN, for appellee.

HELM, J.   This action was brought in the court below by the city of Pueblo against one Boydston as principal,

and appellants as sureties upon the official bond of Boyd-ston given as city clerk of said city.  A demurrer by said sureties to the amended complaint was overruled, and, electing to stand by their demurrer, judgment was rendered against them; from which judgment this appeal is taken.

The complaint avers that Boydston, as city clerk, had collected and received from the issuance of licenses, under ordinances of the city, the sum of $1,792, said sum being so collected for the sole use and benefit of the city; and that he fraudulently converted the same to his own use, and, in violation of the terms of his said official bond, failed and refused to pay the same or any part thereof into the city treasury.

Certain legal propositions concerning the liability of sureties upon official bonds are elementary, and are conceded by counsel of both parties, among which are the following:  First. That the sureties on such bonds enter into contract thereof with reference to existing statutes on the subject, and that, therefore, the law becomes a part of the contract.  Second. That the engagement or the obligation of the surety cannot be extended beyond the strict terms of the bond; and Third. That, when a breach thereof is assigned and an attempt is made to hold the surety, such breach must be predicated upon some *official* misconduct on the part of the principal.

We therefore assume, without the citation of authorities and without argument, that, if the moneys admitted by the demurrer to have been received by Boydston did not come into his hands while acting in his official capacity, and by virtue of some law authorizing him to receive them as city clerk, appellants are not liable in this action.

Thus two subjects of inquiry are presented:  First. Whether or not there was any statute authorizing him to receive such moneys *ex officio* as city clerk, or whether the statutes conferred upon the city council authority to

impose upon him this duty, by ordinance or otherwise; and
Second. If it be concluded that the city council possessed
this authority, does the complaint show that they exer-
cised it?

A preliminary question commands a moment's notice.
We deem the formal averments of the complaint suffi-
cient so far as the statement of the circumstances and
nature of the liability are concerned. It was not neces-
sary to specify from whom or at what times and under
what circumstances, nor the particular business in con-
nection with which each different fee contained in the
aggregate named was collected under the license ordi-
nance. These matters are evidential facts, and the com-
plaint sufficiently avers the ultimate facts showing the
liability.

There is nothing in the statute directly imposing upon
the city clerk the duty of receiving moneys paid for
licenses authorized to be issued; but we think the council
are clearly empowered thereby to require of him the per-
formance of such duty. Section 3369 of the General Stat-
utes specifies certain services demanded of the city clerk,
and concludes with the following language: "And shall
perform such other duties as may be required by the or-
dinances of the city." Section 3316 says, *inter alia*, that
"all moneys collected for licenses, or otherwise, shall be
paid into the treasury of the corporation *at such times
and in such manner* as may be prescribed by ordinance."
Section 3312 authorizes the city council "to fix the
amount, times and manner of issuing and revoking
licenses." Section 3357 declares that the trustees or coun-
cil "shall require from the treasurer, and *such other offi-
cers* as they may think proper, a bond with proper
penalty and surety for the care and disposition of corpo-
ration funds in their hands."

From section 3369 aforesaid it appears that the coun-
cil may, if they see fit so to do, impose upon the clerk,
as clerk, in addition to those specified by statute, such

other duties as, in their judgment, may be deemed appropriate.

Counsel for appellant argue, with reference to the last above mentioned statutory provision, that the other duties which the city council are authorized to impose upon this officer must be germane to those previously specified therein. We deem it unnecessary to controvert or discuss the correctness of their position; for conceding it, we are of opinion that the receipt of corporation moneys, under the circumstances mentioned in the complaint before us, is sufficiently germane to the official duty of issuing licenses. Unquestionably the clerk is the proper officer to issue licenses, and if the ordinance also clothes him with the power of receiving the fee fixed therefor, at the time he issues the license, it is no violation of the principle counsel contend for. The receipt of such moneys, under these circumstances, is just as germane to the specific duties imposed upon the clerk by statute, as is the receipt of fines by the police magistrate, or a justice of the peace, upon convictions before him under the ordinances; or of money in payment of a judgment by the marshal who holds the execution and is about to levy and collect the sum specified therein. This is a very different thing from imposing upon the clerk the general duties of a collector.

It is evident that the treasurer is not the only officer who may be expected to collect or have in his hands corporation funds, because section 3357, above mentioned, expressly provides for the council's requiring a bond, with sureties, from such other officers as may have the care or disposition of such funds; and because section 3316, as heretofore shown, provides that the council may direct the manner in which moneys *already collected* for licenses, or otherwise, shall be paid into the treasury.

Section 3344 of the General Statutes, with the two sections immediately following, refer to the office of city collector and prescribe the duties of such officer; but it

is optional with the council whether a collector, as such, shall be appointed. They may leave the duties of the collector with the treasurer; they may specially appoint a collector; or they may authorize different officers to receive moneys, the payment of which arises from or in connection with a performance of the duties of their respective offices. If no one be specially appointed collector, and if no other officer be authorized to receive funds in a particular instance, under the law the treasurer is the person to whom corporation moneys must be paid.

But counsel for appellant argue that if the city clerk is authorized to receive moneys, in so doing he is acting only in the capacity of collector; and the sureties upon his official bond as clerk cannot be liable for the misappropriation of funds received as collector.

If, by ordinance, the city clerk be specially appointed city collector, counsel's position would unquestionably be correct. In that case he would undoubtedly be required to execute an official bond as collector; but if the city council appoint no city collector, and see fit to say that the clerk, as such, when issuing licenses under the ordinances, shall receive the amount required to be paid therefor and account for the same, there is no good reason why his official bond as clerk, if properly conditioned, should not cover a misappropriation of such funds.

We now proceed to consider the remaining question, namely: Was Boydston authorized by the ordinances, as clerk, to receive moneys paid for licenses upon the issuance thereof? His authority to issue licenses is not questioned. In the section of the ordinance prescribing his duties, it is declared that: "No license shall be issued until the fee therefor shall have been paid." It is also provided that the clerk shall keep a complete record of all licenses issued, the names of the parties, dates, *amounts*, etc., and that he shall report a full statement of these, and all other transactions of his office, at each

regular monthly meeting of the city council. Chapter 10 of the ordinances of the city of Pueblo contains the ordinance concerning licenses. Section 2 thereof provides for the issuance of licenses upon payment of the sum assessed therefor. Section 3 specifically requires the clerk to keep *a record of the sum paid* for each license. The ordinance thereafter, beginning with section 8, specifies fourteen different kinds of business for the carrying on of which a license shall be necessary. Section 9, referring to auctioneers, prohibits the issuance of a license until the applicant "shall have paid to the city clerk the sum of $30 for the year." In connection with the remaining thirteen kinds of business, no individual to whom the fee shall be paid is expressly named; but in every instance the clerk is directed to issue the license "upon payment of" or "upon such person paying," or "upon such applicant paying" the fee prescribed therefor.

We cannot avoid the conclusion that the clear intent of the council was to have the fee in each and every instance paid to the clerk. They make no provision for the payment of this sum to another; had it been their intention to have the treasurer, or to have some other person, receive these fees in the first instance, they would have provided for the presentation of a proper receipt from such person to the clerk, or in some other appropriate way would have required knowledge of the fact of such payment to be brought to him, as authority for issuing a license, and also as evidence of the amount paid therefor, so that the record of such amount which he is required to keep, might be made upon accurate official information, and, therefore, be reliable.

This view appears to be corroborated by the ordinance requiring that the city clerk, before entering upon his duties, shall give a bond in the penalty of $5,000, conditioned, among other things, upon the payment to his successor of all moneys in his custody, or under his control,

belonging to the city. The latter ordinance clearly contemplates that the clerk may have in his possession considerable sums of money belonging to the city.

We conclude, therefore, that the statute gave authority to the city council to impose this duty upon the city clerk, as such; and that the council exercised the authority thus conferred.

The bond upon which this suit was brought, and which was executed by appellants as sureties, was conditioned according to the ordinance, i. e., according to law, as follows: "That if the said Frank M. Boydston * * * shall pay over all moneys that may come into his hands as such clerk, * * * then the above obligation shall be void," etc.

The law requiring Boydston to receive and account for fees paid him upon the issuing of licenses became a part of this contract; and, therefore, the obligation of the sureties to reimburse the city for the fraudulent appropriation thereof by Boydston was also a part of the contract. The judgment must be affirmed.

*Affirmed.*