JOHNSON ET AL., APPELLANTS, v. THE EATON MILLING & ELEVATOR COMPANY, APPELLEE.

1. SURETY, LIABILITY OF.

The liability of a surety is to be strictly construed, but this rule does not exclude a fair consideration of the instrument from which the obligation is derived.

2. SAME.

Where there are several officers of an institution, as of a bank, and it is the customary and usual course of business at such institution for an officer temporarily to discharge the duties of another, in case of the latter's absence, a surety of the former is usually liable for default made while his principal is thus temporarily filling the place of the other.

3. SAME.

Where the same person holds to separate positions, each requiring distinct and independent duties, the obligation of a surety upon a bond, given to cover the acts of the principal in the discharge of the duties devolving upon him while acting in one of such capacities, cannot be extended so as to cover defaults occurring in the other.

4. RECITALS, WHEN CONTROLLING.

The recital in such a bond, undertaking to express the precise intent of the parties, controls a condition or obligation which follows, and does not allow it any operation more extensive than the recital which is its key.

*Appeal from the District Court of Weld County.*

APPELLEE, The Eaton Milling & Elevator Company, a corporation, was organized in 1887. At the first meeting of the directors, Benjamin H. Eaton was elected president, William B. Grant secretary, and appellant, William N. Nice, treasurer, and also manager. The company entered upon active business operations on July 20, 1887, and carried on, for a time, a milling and elevator business at Eaton, Colorado.

It succeeded to the business of B. H. Eaton & Co., a firm consisting of B. H. Eaton, and appellant, William H. Nice. The copartnership business, however, was continued in part for a time after the organization of the corporation, Mr. Nice continuing to act as managing partner of the firm of B. H. Eaton & Co.

The by-laws of the company, adopted at its first meeting, provided, *inter alia,* that the officers of the company should consist of a president, vice president, secretary, treasurer and manager, and that such officers might be required to give bond for the faithful performance of their duties, as the board of directors should direct, and it is further provided by the by-laws that the treasurer shall be the custodian of the funds of the company, *until the same shall be disposed of by order of the board of directors;* and that the manager should have control of the company's business, under the direction of the board of directors.

At a subsequent meeting of the board of directors, an order was entered of record " That the manager and secretary be allowed until next meeting to get their bonds." At still another meeting, held September 27, 1887, the minutes show that the president reported his approval of the treasurer's and secretary's bonds. The bonds thus approved were the

only bonds ever given. That given by Nice is conditioned upon the proper discharge by him of his duties as treasurer.

In only two instances other than those already mentioned do the records disclose any mention of the treasurer, prior to the defalcation herein set forth, viz. : The minutes of a meeting of the company held August 23, 1887, show the following :—" That Mr. Nice as treasurer, be authorized to borrow for the use of The Eaton Milling & Elevator Company, such sums of money as may be needed from time to time, not to exceed $30,000, signing therefor, W. H. Nice, Treasurer." and second, at a meeting held September 27, 1887, the following :—" That Mr. Nice as treasurer, be authorized to borrow for the use of The Eaton Milling & Elevator Company, such sums of money as may be needed from time to time, not to exceed $35,000, in addition to $30,000, provided for on August 23, 1887, signing therefor, W. H. Nice, Treasurer."

Mr. Nice continued to act as treasurer and manager for the company from its first meeting in September, 1887, until July 7, 1888, at which time it came to the knowledge of the company that he had misappropriated its funds to the amount of several thousand dollars, and he was immediately removed from both of said offices. The district court found that Mr. Nice was short to the amount of $8,418.86, and entered judgment for this sum and interest, against both principal and surety upon his bond as treasurer. To reverse this judgment, the case is brought here by appeal.

Mr. H. N. HAYNES, for appellants.

Mr. J. W. McCREERY and Mr. O. J. BATES, for appellee.

CHIEF JUSTICE HAYT delivered the opinion of the court.

As applicable to this case, the following principles with reference to the liability of sureties upon official bonds may be stated. They are founded in sound reason, and supported by authority :

First. The liability of a surety is to be strictly construed, but this rule does not exclude a fair consideration of the instrument from which the obligation is derived.

Second. Where there are several officers of an institution, as of a bank, and it is the customary and usual course of business at such institutions for one officer to temporarily discharge the duties of another, in case of the latter's absence, or sickness, a surety of the former is usually liable for default made while his principal is thus temporarily filling the place of another officer.

Third. Where the same person holds two separate positions, each requiring distinct and independent duties from the other, the obligation of a surety upon a bond given to cover the acts of the principal in the discharge of the duties devolving upon such principal while acting in one of such capacities, cannot be extended so as to cover defaults occurring in the other. *Nat. Mech. B'k'g Asso'n v. Conkling et al.*, 90 N. Y. 116 ; *Rochester City Bank v. Elwood*, 21 N. Y. 88 ; *Detroit Savings Bank v. Ziegler*, 49 Mich. 157 ; *Rogers v. Odom*, 86 N. C. 432 ; *Cooper v. The People*, 85 Ills. 417 ; *Orman v. City of Pueblo*, 8 Colo. 292.

The claim of the appellants is that the record fails to disclose any omission or improper conduct on the part of Nice in his capacity as treasurer, but that the improper conduct complained of occurred in connection with his office as general manager for the company, for which office no bond was given.

The office of manager was the principal office created by the by-laws of the company. This officer was given control and management of appellee's business. It is true that this was nominally under the direction of the board of directors, but, as the directors met only at rare intervals, the general manager was allowed to exercise almost absolute control in directing the details of the company's business. He, with the secretary, were the only officers of the corporation allowed salaries, the former at the rate of $2,000, and the latter at the rate of $1,200 per annum.

It is shown that it was the custom of the corporation to purchase grain through the firm of B. H. Eaton & Co., the latter buying the grain from the farmers, and in turn selling it to the Milling & Elevator Company. An open account was kept by the latter with the former, and Nice advanced large sums of money to the copartnership, of which the president of the Milling Company constituted one member, and he, Nice, the other. The advances were made without authority, but were made in the course of transactions in grain, entered into by the general manager. The shortage, for which the surety was held responsible, is made up almost entirely of advances so made.

While it is true that Nice as treasurer executed notes, and procured the same to be discounted, he placed the proceeds thereof to the credit of the company. The raising of money and the placing of the same with the depository designated, seem to have constituted his only transactions as treasurer, and these were undertaken in pursuance of authority expressly conferred by resolution, duly adopted.

This resolution also provided the manner in which such deposits should be checked out. The resolution reads as follows : " Resolved, That all moneys received by the company shall be deposited in the name of The Eaton Milling & Elevator Company, and that William H. Nice be, and is hereby authorized to check the same out for the uses of this company, signing, The Eaton Milling & Elevator Company, By William H. Nice, Manager."

This resolution was expressly authorized by the by-laws of appellee. By it the disbursement of the funds was given entirely in the charge of the general manager. Applying the principles of law above stated to these facts, and the liability of the surety on the bond of the treasurer cannot be upheld.

The misconduct complained of grew out of the improper disbursement of the company's funds. In paying out this money Nice acted as general manager and not as treasurer. His acts in so doing do not come under the principle governing in cases where an officer, by reason of holding one posi-

tion and as incidental thereto, temporarily performs the duties usually devolving upon another.

It was the express intention of the company to require Nice also to give a bond for the faithful performance of the duties of general manager. If such bond had in fact been given, it would without doubt have covered the transaction now complained of. The fact that through the neglect of other officers of the company such a bond was not required, furnishes no reason why the obligation of the surety upon this bond should be extended so as to cover his transactions as general manager.

The condition of the obligation made the basis of this suit reads as follows:—" That whereas the said William H. Nice has been appointed by the said The Eaton Milling & Elevator Company, as treasurer for said company, now if the said William H. Nice shall well and faithfully discharge his duties as said treasurer, and shall faithfully account for all moneys, property, and other things which may come into his possession, or under his control and management as such treasurer, then the above obligation to be void ; otherwise, to remain in full force and virtue."

The recital in the bond shows that Nice had been appointed treasurer of the corporation, and his surety promised only that he would be responsible for the faithful performance of the duties appertaining to that office. Adopting the language of the supreme court of New York in *National Mechanics' Banking Association v. Conkling, supra,* " That was the office brought to the attention of the surety, and which he had in mind when he executed the bond. The recital in such bond, undertaking to express the precise intent of the parties, controls a condition or obligation which follows, and does not allow it any operation more extensive than the recital which is its key."

The facts in the case before us are much stronger in favor of the surety than in the New York case, for there the letter of the condition following the recital was more extended than the recital itself, but such is not the fact in the case at

bar. There is nothing in the bond before us to indicate that it was executed for the purpose of indemnifying the company for any act of Nice as general manager. The judgment of the district court is accordingly reversed.

*Reversed.*