[No. 1448.]

THE PEOPLE FOR THE USE OF HOWARD v. COBB, EXECUTOR, ET AL.

1. OFFICIAL BOND.

The official bond of a district clerk conditioned that he should pay over all moneys that might come into his hands as clerk was a sufficient compliance with the statutory requirement specifying that the condition shall be to pay over all money that might come into his hands by virtue of his office to make the bond a statutory obligation. Whatever money came into his hands as clerk came into his hands by virtue of his office.

2. SAME—DISTRICT COURT—MONEY PAID INTO COURT.

Money paid to the clerk of the district court which he had no authority to receive, and without an order of court directing the money to be paid into court, was not money paid into court, nor was it money coming into the hands of the clerk by virtue of his office for the payment of which the sureties on his official bond would be liable.

3. OFFICIAL BONDS—LIABILITY OF SURETIES.

The sureties on the official bond of an officer are liable for the abuse of an authority which he possessed, but are not liable for the abuse

of an authority which he pretended to have but did not possess. The fact that the clerk of a district court represented to an assignee that he had authority to receive money of the estate without an order of court, and relying on said representation the assignee deposited with the clerk money belonging to the estate, would not make the sureties on the clerk's bond liable for a conversion of the money by the clerk.

4. COURT RECORDS—UNAUTHORIZED ENTRY OF CLERK.

An unauthorized entry of the clerk is no part of the court records. An order by which money is paid into court must come from the court itself, and an entry by the clerk of money as being in court without such order is nugatory.

5. FUND IN COURT.

Where money was deposited with a clerk of court without an order of court making it a fund in court, the fact that the court afterwards directed the disposition of part of the fund by the clerk could not make it a fund in court. If money is deposited with the clerk without authority, the court might order it paid into court by the clerk and thus make it a fund in court, but it becomes a fund in court by virtue of the order and not of the payment to the clerk.

*Appeal from the District Court of Arapahoe County.*

Mr. CHARLES M. CAMPBELL and Mr. EDWARD D. UPHAM, for appellants.

Mr. W. C. KINGSLEY, Mr. A. B. SEAMAN, Mr. LUCIUS WEINSCHENK and Mr. HARRY S. SILVERSTEIN, for appellees.

THOMSON, P. J., delivered the opinion of the court.

Two actions, brought in the district court of Arapahoe county by the same plaintiff against different defendants, in each of which judgment was given for the defendants, and an appeal taken from the judgment to this court, have been consolidated, and are presented to us as one case. The object of both was to recover upon a bond given by Matt Adams as clerk of the district court. A demurrer was sustained to the complaint in each case, and, the plaintiff declining to plead further, judgment was entered accordingly. There is

therefore, nothing for us to pass upon but the question of the sufficiency of the complaints.

One of the suits is against the executor of the will of V. D. Markham, deceased, upon a bond executed by Matt Adams, as principal, and V. D. Markham, as surety, on the 8th day of September, 1891; and the other against Dennis Sullivan and Job A. Cooper, on a bond executed by Matt Adams, as principal, and Sullivan and Cooper, as sureties, on the 4th day of November, 1893. The two complaints are substantially alike. They charge a misappropriation by Adams of the same. fund, and the bonds are in the same form. The complaints allege the appointment of Adams as clerk, and the execution of the bonds; and then aver that on August 19, 1892, Charles Howard, as assignee of Fallis H. Smith and Henry E. Curzons, having in his hands $3,500 of the estate of his assignors, which he was unable to turn over to the creditors of the estate by reason of a pending contest against the claim of one of the creditors, paid the money into court and deposited it with Adams as clerk; that the deposit was made without a formal order of court, but that it was entered upon the records of the court in its register of actions; that the court afterwards approved, recognized, ratified and adopted it by ordering Adams, on September 15, 1892, to pay out of it the sum of $531, which he did, and by ordering Miss Richards, his successor, on November 27, 1895, to pay over the balance of the deposit, for distribution among the creditors of Smith & Curzons, which she did not. The conditions of the obligations were that Adams should well and faithfully perform and execute the duties of the office of clerk of the district court, during his continuance in office by virtue of his appointment, without fraud, deceit or oppression, pay over all moneys that might come into his hands as such clerk, and deliver to his successor all books, moneys, papers, and other things pertaining to his office, which might be so required by law. The breaches alleged are that the clerk did not pay over the balance of the deposit in his hands to his successor in office, or to any other person or persons

legally authorized to receive the same, but fraudulently converted it to his own use.

The bond required by statute from the clerk is conditioned that he will faithfully perform his duties as clerk, and punctually pay over to the person legally authorized to receive the same, all moneys that may come into his hands by virtue of his office.   General Statutes, sec. 2477.   While the phraseology of the conditions of the bonds in suit differs from that used in the statute, we think the effect is the same.   Moneys coming into the officer's hands as clerk, are moneys coming into his hands by virtue of his office; there can be no lawful payment over of such moneys, except to the person or persons legally authorized to receive them; and if at the expiration of his term he is in possession of money which he is required by law to pay to his successor, then the latter is the person legally authorized to receive it.   In such case the successor, although not specifically mentioned in the statute, would be included in its terms, so that the obligations given bound the obligors to no more and no less than if their conditions had been in the exact statutory language.   Counsel on both sides agree in assuming, although upon dissimilar grounds, that the bonds given were not statutory bonds, drawing, however, widely different conclusions from the same premises.   We are inclined to the opinion that the deviation of the instruments from the phraseology of the statute is not sufficient to authorize a denial to them of the force and effect of statutory obligations; but in the view which we take of the case, it is immaterial whether they are to be regarded as statutory or common-law bonds.   Whichever they may be, the liability upon them of the sureties is limited by their terms, strictly construed.   Murfree on Official Bonds, § 302; *People v. Pennock*, 60 N. Y. 421 ; *Gerber v. Ackley*, 37 Wis. 43 ; *People v. Moon*, 3 Scam. 123 ; *Orman v. People*, 8 Colo. 292; *Tate v. People*, 6 Colo. App. 202.

We are therefore to consider whether the acts charged against Adams amounted to a violation of his official duties. Of course it was his duty,—as it is the duty of every per-

son,—to account for money intrusted to him, and for any failure in such respect, he would be personally liable; but that he would be honest in his dealings, and faithfully discharge his duties as a man and a citizen, was no part of the undertaking of his sureties. They undertook only for his faithful discharge of his official duties, and the payment by him of moneys which he might receive as clerk. He could receive money as clerk only in the discharge of some duty imposed upon him by law. Now no authority to receive the money deposited with him by Howard, can be found in the statutes prescribing and defining the duties of clerks of the district court. Independently of statute he would be bound to take charge of moneys brought into court in pursuance of a judicial order; but the complaint distinctly states that the money was deposited without such order. Payment to a clerk of money which he is not, by law, or some order of the court, authorized to receive, is not a payment into court. *State v. Enslow*, 41 W. Va. 744; *Brown v. People*, 3 Colo. 115. And, speaking generally, delivery of money to an officer to whom it is not legally payable, is not a payment, and the sureties on his bond are not liable for his conversion or misappropriation of the fund. See also *San Luis Obispo v. Farnum*, 108 Cal. 562; *People v. Hilton*, 36 Fed. Rep. 172.

Plaintiff's counsel undertake to make a point on the averment that the money was received by Adams by virtue of his office as clerk. They say that the demurrer admitted the allegation, and that in disposing of the question of the sufficiency of the complaint, it must be taken as true that in receiving the money he acted officially. But the allegation is nothing but a bare conclusion of the pleader, and is contradicted by the facts. A demurrer admits whatever is well pleaded; but a statement of a conclusion drawn from facts which do not warrant it, is not well pleaded. In one of the complaints is an averment, not found in the other, that when the deposit was made, Adams represented to Howard, that he, Adams, was, as clerk, authorized to receive the money without any order of the court; but this in no way strengthens

the plaintiff's case. It was the conclusion, or pretended conclusion, of Adams as to the extent of his legal authority in the premises. His sureties are liable for his abuse of an authority which he possessed, but they are not liable for the consequences of his pretension to an authority which he did not possess. Howard is presumed to have known the law, and therefore to have been uninfluenced by the representation. It is also argued that the entry of the deposit on the records of the court in some way operated to make it a fund in court. An unauthorized entry by the clerk is no part of the records of the court. An order by virtue of which money is paid into court must come from the court itself, and an entry by the clerk of money as being in court, no matter in what form, or in what book, without such order, is nugatory.

From the facts which the plaintiffs lay before us it is clear that Adams received the deposit in his individual capacity, and not by virtue of his office. But it is insisted that the subsequent orders in relation to the money had the effect to make it a fund in court. The complaint alleges that on the 15th day of September, 1892, the court ordered that the clerk should pay from this money a certain specified amount, which he accordingly did. The theory of the complaint, as also of the argument, is that the court by this order approved, or adopted, or ratified the act of the clerk in taking the money. A principal may ratify an act done by his agent in excess of the authority given; or one may adopt the act of another who assumed to be an agent but was not, in such manner as to estop himself to deny that the other was his agent. But the relations existing between a court and its clerk are not those of principal and agent, and the law of estoppel does not apply to courts. Orders, judgments, and decrees are made and rendered by the court in the exercise of its judicial functions, and these cannot be delegated. The clerk cannot, either expressly or by implication, be invested with the authority of the court. Doubtless the court, upon being advised that there is money which has been placed in the hands of its clerk without its sanction, may, in a proper case,

order the clerk to pay it into court. When paid in, it would become a fund in court, by virtue, not of the original deposit, but of the order. Judicial orders are not to be deduced by implication. They speak for themselves, their meaning is to be found in their terms, and it is not allowable by speculation or farfetched inference to give them an effect outside of their language. The order we are considering was to pay a certain sum from money in the clerk's hands. At the time the order was made the money was not a fund in court, it had never been made so, and the order was not that the payment be made out of a fund in court. The order affected the clerk in the capacity in which he held the money, it could not affect him otherwise; and as he did not hold the money officially, it amounted only to a direction to him personally. By no system of reasoning could it operate to convert the money in the clerk's hands into a fund in court, or to relate back and make the original deposit a deposit in court.

We have discussed the order on the basis of the statements in the complaints concerning it; but if we were to accept counsel's theory of the effect of such an order, we would be without the data necessary to an intelligent idea of what this one really was. Why it was made, at whose instance, on what showing and in what proceeding, to whom the money was to be paid and for what purpose, the complaints do not disclose. If it were permissible, which it is not, to seek for the intention of the court in respect to the deposit, as such intention might be implied from the circumstances, and give it the effect of an order different from the one actually made, before we could commence our search, we would have to be in possession of the unstated facts. Furthermore, at the time of the entry of the order, Adams may have already squandered all of the money except the amount he paid. If he had, he did so before the money was in his hands as clerk, and before any responsibility on account of it had attached to his sureties. No order of court could make them answerable for a defalcation for which they were not responsible at the time

of its occurrence. They cannot be held beyond the letter of their obligation, it was incumbent upon the plaintiff to set forth every fact necessary to fasten a liability upon them; and an important fact, not stated, was the ability of the clerk, at the time, to turn the money into court. What we have said concerning the first order applies to the second; but it may be remarked, in addition, that it appears very plainly from the complaint that the money had been embezzled by Adams long before the latter order was made.

But counsel, as if in partial abandonment of their first position, and of the case attempted to be stated in the complaint, insist with a good deal of energy that if the money was not in Adams's hands by virtue of his office, he held it by color of his office, and that his sureties are liable in the latter case to the same extent as in the former. There is an apparent diversity among the adjudications, concerning the liability of the obligors upon official bonds for acts done *colore officii*; but when they are critically examined with reference to the facts, the form of bond, and the statute law applicable, we think the differences will be found to relate to words rather than principles. It is not necessary to a decision of the questions before us that we should enter into an examination of the distinction between acts done by virtue of office, and those done under color of office. By applying the universally recognized rule that the obligation of the sureties cannot be extended beyond the strict terms of the bond, to the case stated by the complaint, we can readily reach a conclusion in harmony with all the adjudications on both sides of the seeming conflict. The obligations of these sureties, in terms, made them responsible only for moneys which Adams might receive as clerk. Receiving money as clerk would be receiving it in an official capacity, or by virtue of the office. As we have seen this money was not received by him by virtue of his office.

By our laws the assignee of an insolvent estate gives bond for the faithful performance of his duties. He acts, it is true, under the supervision and order of the court; but he collects

and disburses the money of the estate, himself.   He does not
deposit it in court.   On his failure to account for the estate
or its proceeds, parties aggrieved look to him and his sureties,
and not elsewhere.   As we read the complaint, Howard had
in his possession $3,500 of the money of the assigned estate.
There was a contest over a claim of one of the creditors, and
until that was settled, Howard could not distribute the
money.   He did not like the trouble of carrying it around,
and so instead of depositing it in bank, or locking it up in
his own strong box, he left it with Adams for safe keeping.
The clerk's office is not a bank, and performs none of the
functions of a bank.   Personally, the clerk may take charge
of the money of his neighbors if he likes, but he cannot do so
officially.   If Howard had placed the money in bank, the
bank would have been responsible for it.   His safe would
probably have yielded it up when it was wanted, if he had
put it there.   As he deposited it with Adams, he had as his
security the personal responsibility of Adams, whatever that
might amount to, and nothing else.

Let the judgments be affirmed.

*Affirmed.*